UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MAURIZIO DOMENICO VAGLICA,

                Plaintiff,

     -against-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
------------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-CV-05876 (JMA)

**APPEARANCES**

    Charles E. Binder, Esq.
    485 Madison Avenue, Suite 501
    New York, NY 10022
    *Attorney for Plaintiff*

    Jennifer E. Whalen
    Social Security Administration
    601 East 12th St., Room 965
    Kansas City, MO 64106-2898
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Maurizio Domenico Vaglica ("Plaintiff" or "Vaglica") seeks review and reversal of the final decision by the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 17, 19.) For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's cross-motion is GRANTED.

## I. BACKGROUND

**A. Procedural History**

Plaintiff was born in 1974 and was 27 at the onset of his alleged disability. (Tr. 134-135)[1] He possesses a high school education and his past employment includes work as a firefighter and contractor. (Tr. 51.)[2]

Plaintiff filed his application for Social Security Disability benefits ("SSD") on April 12, 2017, alleging a disability onset date of January 29, 2002 due to lumbar spine impairment, herniated discs with severe back pain, bilateral knee impairments, and multiple joint arthritis. (Tr. 82, 135-136, 146, 160.)

Following the denial of his application, on August 22, 2017 (Tr. 85-96), Plaintiff requested a hearing and was represented by counsel at an administrative hearing on July 16, 2019 before ALJ Brian J. Crawley ("ALJ Crawley"). (Tr. 20-54.)

In a decision dated October 22, 2019 (the "Decision"), ALJ Crawley denied Plaintiff's claim. (Tr. 7-19.) ALJ Crawley followed the five-step process pursuant to 20 C.F.R. §§ 404.1520(a) and 416.920 and determined that Plaintiff was not disabled within the meaning of the Act on or before his date last insured. (Id.) Thereafter, the Appeals Council denied Plaintiff's request for review on October 6, 2020 at which point the Decision became the final decision of the Commissioner. (Tr. 1–6.) This appeal followed. (See ECF No. 1.)

A. **Relevant Medical Evidence**

   1. **Relevant Medical Evidence Before Last Date Insured**

On January 29, 2002, Plaintiff reported to the Winthrop University Hospital emergency room following a fall down 10 stairs. (Tr. 345.) A physical examination indicated various tender points, including joint tenderness, tenderness and valgus pressure in the right knee, tenderness on

---

[1] "Tr." refers to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by this District's Electronic Case Filing System.

the top of the right shoulder, diffuse tenderness in the lumbar spine. (Id.) X-rays of the lumbar spine and knee were interpreted as "normal." (Tr. 353.) Plaintiff was discharged the same day with a reported knee sprain and lower back pain. (Tr. 349.)

On June 19, 2006, Plaintiff was seen by P. Leo Varriale, M.D. ("Dr. Varriale"), a board-certified orthopedist, for treatment of recent muscle spasms and lower back pain. Dr. Varriale prescribed Plaintiff pain medication (Vicodin) and corticosteroids (Medrol) and recommended daily exercise. (Tr. 240-44.) Dr. Varriale's records during the relevant time period primarily document treatment of lower back pain but do not contain a diagnosis. (Tr. 240-46.) At a September 26, 2007 visit, Dr. Varriale performed a physical examination, which revealed a positive right straight leg raise test and lumbar spine tenderness. (Tr. 241.) Dr. Varriale opined that Plaintiff was totally disabled from regular duties or work. (Tr. 241.) On December 15, 2007, two weeks prior to the date last insured, Plaintiff continued to report back pain radiating down his right lower extremity to the toes, with numbness. (Tr. 240.) Plaintiff continued on Vicodin and Dr. Varriale reaffirmed his opinion that Plaintiff was totally disabled from work. [Cite]

**2. Relevant Medical Evidence After Last Date Insured**

In 2008, Dr. Varriale treated Plaintiff on three occasions and remarked that Plaintiff's condition was "status quo." (Tr. 237-39.) Plaintiff continued to report lower back pain with radiating down to his toes and numbness. (Tr. 239.) On December 1, 2008 Plaintiff reported no change in his symptoms when seen. (Tr. 237.) Dr. Varriale again opined Plaintiff was disabled from work. (Id.) On June 8, 2009, Plaintiff reported lower back pain with radicular symptoms down his right lower extremity to his toes, as well as numbness and tingling in his foot. (Tr. 235.) A physical examination revealed unchanged findings from his prior visit. Dr. Varriale diagnosed lumbar herniated nucleus pulposus. (Id.) On June 7, 2010, Plaintiff was seen for follow up of

3

chronic lower back pain.  (Tr. 234.)  A physical examination revealed a positive straight leg raise test, spasm, and decreased range of motion.  (Id.)  In 2010, Dr. Varriale continued to prescribe Plaintiff Vicodin and added the pain medication Roxicodone.  (Id.)

On July 22, 2015, an MRI scan was performed on Plaintiff's lumbar spine and right shoulder.  (Tr. 369, 372.)  Another MRI performed on September 16, 2015 indicated mild-to-moderate osteoarthritis and tendinosis of the right shoulder, and "mild" degenerative changes of the thoracic spine without disc herniation, spinal stenosis, or nerve root compression.  (Tr. 220).

On August 17, 2015, Plaintiff was seen for follow up of pain in the lower back, thoracic spine, right shoulder, and right knee.  (Tr. 288.)  An MRI of the right shoulder on September 16, 2015, demonstrated moderate glenohumeral joint osteoarthritis with 10 mm full-thickness glenoid cartilage defect and marginal spurring, a degenerated labrum with a nondisplaced superior labral tear, small joint effusion and synovitis with a 5 mm intra-articular loose body, mild supraspinatus and infraspinatus tendinosis with articular surface fraying, and mild-to-moderate acromioclavicular joint osteoarthritis.  (Tr. 218-219.)

On March 9, 2017,  Dr. Varriale completed a "Lumbar Spine Impairment Questionnaire." (Tr. 355-62.)  Dr. Varriale indicated Plaintiff was under his case for lumbar spine herniated disc, bilateral knee osteoarthritis, and bilateral shoulder impingement, demonstrated by clinical findings of limited range of  motion, tenderness, muscle spasm, and a positive straight leg raising test.  (Tr. 356-57.)  He stated that the diagnoses were supported by an MRI of the lumbar spine that showed multiple disc herniations.  (Tr. 357.)  In the questionnaire, Dr. Varriale opined that as of 2002 Plaintiff could sit for one hour and stand/walk for one hour in an eight-hour workday; that he must get up and move around every 10 minutes; and he can lift/carry up to five pounds occasionally.

4

(Tr. 358-60.)  Dr. Varriale further opined that Plaintiff experienced constant pain and was incapable of even low stress work.  (Id.)  Dr. Varriale retired in 2017.

In October 2017, Alan Nelson, M.D. ("Dr. Nelson") became Plaintiff's treating physician.  (Tr. 334.) At that visit, Plaintiff reported to Dr. Nelson that he had "pain in multiple sites," "thinks he had concussions in the past from football but never diagnosed." (Id.) Plaintiff informed Dr. Nelson that he was on Oxycodone for pain and unable to work. (Id.) Dr. Nelson recommended that Plaintiff "wean off oxycodone" and "lose weight." (Id.)

On November 20, 2018, Plaintiff reported to Dr. Nelson, that on November 16, 2018, he "fell down a flight of stairs" which affected his right arm, right shoulder, and both knees. (Tr. 332-33.)  Dr. Nelson opined that "its my feeling that currently and in the past [Plaintiff] cannot work." Dr. Nelson recommended the Plaintiff "try to lose weight," and also ordered new MRIs "since Plaintiff's last MRIs'" were three years old. (Id.)

The MRIs dated indicated partial tears of the anterior and medial ligaments. (Tr. 497-99.) MRI scan of the cervical spine showed multiple disc bulges and herniations impinging on nerve roots. (Tr. 495-96.) Lumbar spine imaging indicated a bulging disc at L4-5 with a tear impinging upon the L4 and LS nerve roots. (Tr. 493.) An MRI scan of the thoracic spine displayed some straightening of the normal spinal curvature due to muscle spasm, but no disc bulges or stenosis. (Tr. 492.)

Dr. Nelson opined on June 5, 2019 that since 2002, Plaintiff has been disabled due to musculoskeletal and neuropathic problems that have significantly worsened since then despite physical therapy and that he has obstructive sleep apnea. (Exhibit 11F [Tr ref?].) Dr. Nelson further opined that Plaintiff can sit and stand/walk for 0-1 hour and cannot sit continuously; can

5

never carry any weight; is in constant pain that would interfere with his attention and concentration; cannot perform even low stress work. [Cite]

**B.  The Decision**

In a decision dated October 22, 2019 (the "Decision"), ALJ Crawley found that Plaintiff was not disabled under the Act and thus denied Plaintiff's claims. (Tr. 12-15.) Following the five-step process set forth above, ALJ Crawley determined that Plaintiff had met the insured status requirements of the Act but had no medically determinable impairments through the date last insured. (Tr. 12-15.)

## II.  LEGAL STANDARDS

**A.  Social Security Disability Standard**

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an administrative law judge (or "ALJ") determines disability.  See 20 C.F.R. §§ 404.1520, 416.920.  The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the

> Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## B. Scope of Review

In reviewing a denial of disability benefits by the Social Security Administration ("SSA"), it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## C. Analysis

Plaintiff challenges ALJ Crawley's finding that he was not disabled under the Act. Specifically, Plaintiff raises two arguments: (1) the ALJ failed to properly evaluate the medical opinion evidence when determining Plaintiff had no severe medically determinable impairments prior to the date last insured, and (2) the ALJ failed to properly evaluate Plaintiff's testimony. (ECF No. 18 at 14, 20.)[3] Upon a review of the record, the Court finds that the ALJ properly determined that Plaintiff was not disabled prior to his date last insured and therefore was not eligible for benefits.

### 1. Substantial Evidence Supports the Decision

Substantial evidence supports the ALJ's finding that Plaintiff was not disabled prior to his last insured date.

Applying the five-step process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since January 29, 2002. (Tr. 12.) The parties do not contest this finding and it is supported by substantial evidence.

---

[3] Because the Court affirms the ALJ's Decision at the second step of the sequential evaluation process, it need not address Plaintiff other contentions. Flanigan v. Colvin, 21 F. Supp. 3d 285, 301 (S.D.N.Y. 2014)(citing Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727 at *5 (E.D.N.Y. Mar. 19, 1999))("[a] finding that a condition is not severe means that the plaintiff is not disabled, and the Administrative Law Judge's inquiry stops at the second level of the five-step sequential evaluation process.")(emphasis added)

Step two of the sequential process required Plaintiff to prove that he had a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Before addressing the issue of severity, the ALJ had to first determine whether Plaintiff had a medically determinable impairment at all. 20 C.F.R. § 404.1521. Because ALJ Crawley found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment," he ended his analysis and found that Plaintiff was not disabled. (Tr. 12, 15.)

Plaintiff's argument that the ALJ improperly weighed the opinions of Dr. Varriale and Dr. Nelson by substituting his lay judgment of the medical evidence is belied by the record. (ECF No. 18, Pl's Mot. at 16.) As required by the regulations, the ALJ examined the record for any diagnostic testing or clinical examinations that could support Plaintiff's alleged limitations prior to the date last insured of December 31, 2007. (Tr. 12-15.) Having found none, the ALJ afforded little to no weight to the medical opinions given the lack of supportability and consistency. (Id.) This is not an error.

An ALJ may afford less weight or none at all to medical opinions that are "temporally remote from the Plaintiff's date last insured and do not address the Plaintiff's level of functioning during the relevant time period." Flanigan v. Colvin, 21 F. Supp. 3d 285, 304 (S.D.N.Y. 2014). While the timing of a medical opinion, by itself, would not disqualify a claimant from being considered for purposes of disability determination, David F. v. Comm'r of Soc. Sec., No. 20-CV-6479, 2021 WL 2985152, at *4 (W.D.N.Y. July 15, 2021), evidence of a claimant's condition at a later time is only relevant to the extent that it shed light on his condition as of the date he was last insured. Moscatiello v. Apfel, 129 F. Supp. 2d 481, 489 (S.D.N.Y. 2001). Importantly, where there is a "lack of supporting evidence on a matter where the claimant bears the burden of proof,"

9

the Second Circuit has recognized that such circumstances can "constitute substantial evidence supporting the denial of benefits." Reynolds v. Colvin, 570 F. App'x 45, 47 (2d Cir. 2014) (citing Talavera v. Astrue, 679 F.3d 145, 153 (2d Cir. 2012)).

Here, the ALJ determined the medical opinions held minimal persuasion because they were not supported by the overall record or based on any objective diagnostic techniques during the relevant time period. (Tr. 14-15.) Specifically, ALJ Crawley found that there were no documented examination findings or diagnostic results with specific limitations of range of motion during the relevant time period. (Tr. 13.) ALJ Crawley also decided that much of Plaintiff's evidence relied on medical opinions and findings determined several years after the relevant time period. (Tr. 14-15.) In this case, the medical opinions of Dr. Varriale and Dr. Nelson were written, in large part, roughly a decade after Plaintiff's insured status already expired. ALJ Crawley, in summarizing the record, rightly determined that where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process (SSR 16-3p)." [Cite.] The Court agrees with ALJ Crawley's well-reasoned Decision.

Plaintiff points to no specific objective diagnostic techniques indicating medically determinable impairments prior to the date last insured. (Tr. 217-220, 486-99). Reliance on the 2015 and 2018 MRI scans is unpersuasive, because these MRIs were conducted more than a decade after the alleged onset of his disability and were not consistent with the x-ray examinations conducted in January 2002. (Id.) As other courts have reasoned, such "[a]fter-the-fact medical assessments are inherently less credible indicators of a patient's impairments than medical assessments made during the relevant period." Litwin v. Comm'r of Soc. Sec., No. 18-CV-00213, 2019 WL 6525626, at *5 (E.D.N.Y. Dec. 4, 2019) (internal citations omitted).

Indeed, Plaintiff claimed to be disabled as of January 29, 2002, the date of his emergency room visit, but the ALJ noted that there was nothing in the medical records that substantiated this finding. (Tr. 13.) Rather, the emergency room visit only resulted in a diagnosis of right knee sprain and low back pain. (Tr. 13.) The x-rays taken of Plaintiff's spine and right knee were interpreted as "normal." (Tr. 353.) Plaintiff was then discharged and provided a release allowing him to return to work without restrictions in two to four days. (Tr. 349, 351.) Plaintiff only sought further medical treatment approximately four years later and did not file the current application until almost ten years after the expiration of his insured status.

Plaintiff's cited caselaw is inapposite. Plaintiff's citations primarily concern cases where the ALJ wholly failed to discuss a medical opinion or neglected to consider the possibility of a retrospective diagnosis. That is not the case here, nor does Plaintiff argue that the ALJ wholly disregarded a medical opinion. As detailed in the Decision, ALJ Crawley summarized the medical opinions and in applying the relevant regulations noted that the medical opinions were not supported under the regulations. (Tr. 15.) "Social Security regulations require that when there is no medically determinable impairment, that is, an impairment verified by medical signs or laboratory findings, the application must be denied at step 2 of the sequential evaluation process because there is no severe impairment." Flanigan, 21 F. Supp. 3d at 303.

Contrary to Plaintiff's insistence, in order to be considered "disabled" for purposes of the Act, Plaintiff was required to present evidence of a disability *before* his last date insured on December 31, 2007. Evidence *after* December 31, 2007 cannot serve as the basis for a finding of disability because the Act required Plaintiff to be insured when his disability first began. See 20 C.F.R. § 404.131(a) ("you must have disability insured status in the quarter in which you become disabled"). See also Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989) ("regardless of the

seriousness of his present disability, unless [Plaintiff] became disabled before, [his date last insured], he cannot be entitled to benefits.") (citations omitted)); Behling v. Comm'r of Soc. Sec., 369 F. App'x 292, 294 (2d Cir. 2010) (claimant's current condition not relevant because she "was required to demonstrate that she was disabled as of the date on which she was last insured" and "[a]ny new impairments are not relevant") (citations omitted)); Flanigan, 21 F. Supp. 3d at 302 (denying benefits where "at best the evidence show[ed] that [Plaintiff] experienced progressively worsening symptoms that eventually became disabling" after his date last insured).

Plaintiff has not met this burden, because he points to no medical evidence supporting a finding of a disability before his last date insured. Neither Dr. Varriale or Dr. Nelson's medical opinions offer insight into Plaintiff's specific limitations during the relevant time period or are based on objective evidence before the last date insured. (Tr. 355-359; 687-91.) In particular, Dr. Nelson's medical opinion was based on MRIs from November 2018, well-beyond the last date insured. (Tr. 864.) Accordingly, ALJ Crawley's conclusion that Plaintiff was not disabled is supported by substantial evidence. See Reynolds, 570 F. App'x at 47 (holding that "lack of supporting evidence" on a matter can "constitute substantial evidence supporting the denial of benefits.")

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Commissioner's motion for judgment on the pleadings and DENIES Plaintiff's motion for judgment on the pleadings. The Clerk of the Court is ordered to close this case.

**SO ORDERED.**

Dated: September 26, 2022
Central Islip, New York

                                                                             /s/ (JMA)
                                                         JOAN M. AZRACK
                                                         UNITED STATES DISTRICT JUDGE